IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LAWRENCE LODER AND NANCY
LODER,

                Plaintiffs,

    v.

WORLD SAVINGS BANK, N.A., et
al.,

                Defendants.

NO. C11-00053 TEH

ORDER RE: MOTION TO
DISMISS AND MOTION TO
STRIKE

United States District Court

For the Northern District of California

      This matter came before the Court on May 16, 2011, on the motion to dismiss and motion to strike filed by Defendant Wachovia Mortgage, FSB ("Defendant" or "Wachovia"). For the reasons set forth below, Wachovia's motion to dismiss is GRANTED and its motion to strike is DENIED AS MOOT.

**BACKGROUND**

      In 2006, Lawrence and Nancy Loder ("the Loders" or "Plaintiffs") sought to refinance two mortgages on their home at 95 Oak Ridge Road, San Rafael, California ("the property"), where they have lived for 40 years.[1] Mr. Loder began working with Teresa Pagano ("Pagano"), a loan broker with Defendant 5 STAR Real Estate Investments ("5 STAR"). Through Pagano, the Loders borrowed $860,000 from World Savings Bank, FSB ("World Savings").[2] The loan was a 25.5 year option adjustable rate mortgage with a program that

---

    [1]  On a motion to dismiss, the Court must accept as true all material factual allegations in the complaint, as well as any reasonable inferences to be drawn from them. *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949-50 (2009); *Broam v. Brogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

    [2]  The Court takes judicial notice of the deed of trust recorded by World Savings, which establishes the amount borrowed by Plaintiffs. It is a true and correct copy of an official public record of the Marin County Recorder's Office, and its authenticity is capable

United States District Court

For the Northern District of California

contained large biweekly payments. It was secured by a deed of trust dated July 12, 2006, and recorded against the property. World Savings Bank changed its name to Wachovia in 2008, and Wachovia merged with Wells Fargo Bank, N.A., the following year.[3] The Court, like the parties, will refer to the Defendant lender as "Wachovia."

The Loders allege that Pagano mishandled several aspects of the loan origination process. First, she did not enter into a mortgage loan origination agreement with Plaintiffs. Second, she encouraged the Loders to enter an adjustable rate mortgage rather than a fixed rate mortgage. She also overstated the Loders' income in their loan application. The Loders had disclosed to Pagano that their gross income was $155,000 per year, and they provided her with their 2005 tax return showing that their combined income was $78,227. Yet in the loan application, Pagano listed the Loders' income at $270,000 per year.

Pagano never explained the specific terms and consequences of the loan, particularly the fact that the Loders' payments would increase over time. She did not tell Plaintiffs the duration of the loan. When the time came for the Loders to sign the required documents, on July 12, 2006, a notary came to the Loders' home and brought the documents to be signed. No one reviewed the documents with the Loders – the notary simply told Plaintiffs where to sign. Pagano did not provide the Loders with several required documents, nor did she tell the Loders that they were entitled to them. She did not give them a Notice of Mortgage Service Transfer, a Final HUD-1 Statement, an Affiliated Business Arrangement disclosure, or a Consumer Handbook on Adjustable Rate Mortgages.

The Loders attempted to obtain a loan modification at the end of 2009 and the beginning of 2010. They were unsuccessful. Plaintiffs filed suit against Wachovia and 5

of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b). Plaintiffs do not object to the Court taking judicial notice of this or any other document submitted by the Defendant.

[3] The Court grants Wachovia's request for judicial notice of Exhibits B through F, which establish the history of World Savings. The Court finds that these are true and correct copies of documents reflecting official acts of the executive branch of the United States, and that they are judicially noticeable pursuant to Rule 201(b)(2) of the Federal Rules of Evidence.

2

1   STAR in Marin County Superior Court on November 30, 2010. Wachovia removed to this
2   Court on January 5, 2011, and now seeks to dismiss all claims and strike portions of the
3   Complaint.

4

5   **LEGAL STANDARD**

6       Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a
7   plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a
8   motion to dismiss, the Court must "accept all material allegations of fact as true and construe
9   the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*,
10  487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a
11  legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50.

12      A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or
13  the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*
14  *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff
15  must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*
16  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but
17  it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129
18  S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that
19  allows the court to draw the reasonable inference that the defendant is liable for the
20  misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with
21  leave to amend unless it is clear that amendment could not possibly cure the complaint's
22  deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

23

24  **DISCUSSION**

25      Wachovia asks the Court to dismiss the following state and federal claims relating to
26  the origination of the Loders' loan: (1) deceit; (2) negligence; (3) breach of fiduciary duty;
27  (4) elder abuse; (5) unfair competition under the California Business and Professions Code
28  section 17200, *et seq.*; (6) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601,

United States District Court
For the Northern District of California

*et seq.*; (7) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*; (8) violation of California Civil Code section 2923.5; and (9) declaratory and injunctive relief. Wachovia contends that the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*, preempts some of the Loders' state claims, and that the Loders have failed to state a claim upon which relief can be granted. The Court will begin by discussing HOLA, and will then address each claim, in turn, below.

**I. HOLA Preemption**

Wachovia argues that because it is a federal savings association,[4] some of Plaintiffs' state claims are preempted by HOLA and its implementing regulations, including 12 C.F.R. § 560. Congress enacted HOLA "to charter savings associations under federal law, at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008). The court in *Silvas* explained further:

> HOLA was designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide best practices. We have described HOLA and its following agency regulations as a radical and comprehensive response to the inadequacies of the existing state system, and so pervasive as to leave no room for state regulatory control. [B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable.

514 F.3d at 1004-05 (quotations and citations omitted) (alteration in original).

Congress, through HOLA, gave the Office of Thrift Supervision ("OTS") "broad authority to issue regulations governing thrifts." *Id.* at 1005 (citing 12 U.S.C. § 1464). One of the regulations issued by OTS, 12 U.S.C. § 560.2 ("section 560.2"), deals with preemption, and the Ninth Circuit has held that this regulation has no less preemptive effect than HOLA itself. *Id.* The regulation has three main sections – 560.2(a), 560.2(b), and 560.2(c). Section 560.2(a) provides that

---

[4] Plaintiffs do not contest Wachovia's assertion that it is a federal thrift subject to HOLA and OTS regulations. *Id.* at 1006 n.2.

United States District Court

For the Northern District of California

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . . .

12 C.F.R. § 560.2(a). Section 560.2(b) offers "illustrative examples" of state laws preempted by HOLA, and section 560.2(c) does the same for state laws generally not preempted. 12 C.F.R. §§ 560.2(b), (c). Of the specific types of state laws that are preempted under section 560.2(b), Wachovia argues that four are applicable to this case. Section 560.2(b) states that "the types of state laws preempted by [section 560.2(a)] of this section include, without limitation, state laws purporting to impose requirements regarding:

> . . . .

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

> . . . .

> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

> . . . .

12. C.F.R. §§ 560.2(b)(4), (5), (9), (10).

Section 560.2(c) provides that

> [s]tate laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of

5

Federal savings associations or are otherwise consistent with the purposes of [section 560.2(a)]:

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

(i) Furthers a vital state interest; and

(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12. C.F.R. 560.2(c).

Wachovia argues that the Loders' deceit, negligence, breach of fiduciary duty, elder abuse, California Civil Code section 2923.5 ("section 2923.5"), and declaratory and injunctive relief claims are preempted by various provisions of section 560.2(b). Most of these claims appear to arise in contract, real property, and tort law – areas identified as generally not preempted in section 560.2(c). Plaintiffs cite section 560.2(c) in their opposition, yet they offer no analysis in support of their claims in light of that statute's requirement that to survive, these claims must "only incidentally affect the lending operations of Federal savings associations" or be "otherwise consistent" with section 560.2(a).[5] 12 C.F.R. § 560.2(c). They also ignore an OTS rule relied upon by the Ninth Circuit in *Silvas* that explains how to analyze whether a state law is preempted under section 560.2:

When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is

---

[5] The Loders cite *Bartolome v. Homefield Financial, Inc.*, an unpublished case from the Central District of California. No. CV 09-7258 AHM, 2009 WL 4907050 (C.D. Cal. Dec. 11, 2009). In *Bartolome*, the issue before the court was complete preemption for the purposes of determining whether the court could retain subject matter jurisdiction. That court's observation that section 560.2 does not preempt certain enumerated claims does not shed light upon whether the Loders' claims are among those that are preempted.

listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This preemption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Silvas*, 514 F.3d at 1005 (citing OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)). The Ninth Circuit explained that the OTS's construction of its own authority "must be given controlling weight." *Id.* at 1005 n.1. It also interpreted the first step in the OTS's analysis to require courts to determine whether a given state law, "as applied," is a type of law listed in section 560.2(b). *Id.* at 1006. For example, in finding that California's unfair competition law was preempted by HOLA, the Ninth Circuit examined the plaintiffs' factual allegations in support of the claim rather than the text of the law giving rise to the claim. *Id.* The claim challenged the defendant's practice of misrepresenting consumers' legal rights in advertisements and other documents, and the court in *Silvas* held that the heart of this claim fit within section 560.2(b)(9) "because the alleged misrepresentation is contained in advertising and disclosure documents." *Id.* The claim also challenged a fee charged by the defendant, and the court held that section 560.2(b)(5) "specifically preempts state laws purporting to impose requirements on loan related fees." *Id.*

## II. Plaintiffs' Claims

### A. Fraudulent Deceit

Plaintiffs' first claim for fraudulent deceit under California Civil Code section 1709 alleges that Wachovia engaged in "failures to disclose" and "suppression of facts" concerning the loan. Compl. ¶ 81. Section 560.2(b)(9) preempts state laws that touch upon "[d]isclosure and advertising." Similar allegations regarding "the adequacy of disclosures made by Defendants in soliciting and settling the loan" were held to be preempted by section 560.2 in *Andrade v. Wachovia Mortgage, FSB*, No. 09 CV 0377 JM, 2009 U.S. Dist. LEXIS 34872, at *9 (S.D. Cal. Apr. 21, 2009). *See also Kelley v. Mortg. Elec. Registration Sys.*, 642

F. Supp. 2d 1048, 1054 (N.D. Cal. 2009) (finding that a fraud claim based upon false representations about plaintiffs' loan was preempted by HOLA); *Conder v. Home Savings of Am.*, 680 F. Supp. 2d 1168, 1175 (C.D. Cal. 2010) (holding the plaintiff's fraudulent omissions claim alleging a failure to disclose details regarding the interest rate and the payment schedule was preempted by sections 560.2(b)(4) and 560.2(b)(9)). The Court finds that the Loders' deceit allegations implicate disclosures within the meaning of section 560.2(9). This claim against Wachovia is therefore preempted by HOLA,[6] and Wachovia's motion to dismiss it is GRANTED.

**B. Negligence**

The Loders' negligence claim alleges that Wachovia "knowingly accept[ed] a loan application with overstated income," Compl. at ¶ 96, "failed to supervise" the broker of the loan," *id.* at ¶ 103, "failed to consider the usual underwriting factors for assessing creditworthiness, deceived Plaintiffs as to the true terms of the loan, and did not work in Plaintiffs' best interests in convincing them to sign the loan documents," *id.* at ¶ 101. It also alleges that Wachovia "had a duty not to deceptively collect money from Plaintiffs, in the form of mortgage payments, which it knew it was not entitled to collect because Plaintiffs' obligation had previously been extinguished" due to Pagano's conduct in brokering the loan. *Id.* at ¶ 93. Insofar as the Loders' negligence claim alleges deception or failure to disclose information, the claim is preempted by section 560.2(b)(9) (loan disclosures). Other allegations – Wachovia's use of a loan application, its lack of supervision over the broker, its consideration of Plaintiffs' creditworthiness, and its motivations in lending money – attack the process by which Wachovia lent money to Plaintiffs, and fall under 560.2(b)(10), which preempts state laws that touch upon mortgage loan "origination" or "sale." Even the allegation that Wachovia had a duty not to collect mortgage payments from the Loders is premised upon the circumstances under which the loan originated. Like the preempted claims

---

[6] As noted in *Silvas*, where a state law is preempted under 560.2(b), the Court need not consider whether the law fits within the requirements of 520.2(c). 514 F.3d at 1006-07.

United States District Court
For the Northern District of California

in *Naulty v. Greenpoint Mortgage Funding, Inc.*, this cause of action "is based upon allegations pertaining  Wachovia's lending operations." Nos. C 09-1542, C 09-1545 MHP, 2009 WL 2870620, at *4 (N.D. Cal. Sept. 3, 2009) (holding preempted several claims, including negligence/negligence per se). It is therefore preempted under HOLA, and Wachovia's motion to dismiss this claim is GRANTED.

## C. Breach of Fiduciary Duty

The Loders' third claim alleges that Wachovia "breached its fiduciary duties owed to Plaintiffs by placing and negotiating the Subject Loan without due care to Plaintiffs' best interest or for the protection of their rights, including by making false representations and failing to make material disclosures regarding the Subject Loan." Claims regarding the placing of Plaintiffs in the loan, and the negotiation of that loan, fall squarely within section 560.2(b)(10), which preempts state law claims premised upon the "origination" and "sale" of mortgages. Insofar as this claim is premised upon Wachovia's failure to make material disclosures regarding the loan, it is preempted by section 560.2(b)(9) (loan disclosures). Like the claims in *Naulty*, one of which alleged breach of fiduciary duty, this claim reaches "matters committed by Congress to regulation by a federal agency." 2009 WL 2870620, at *4. Wachovia's motion to dismiss this claim is therefore GRANTED.

## D. Elder Abuse

Plaintiffs' elder abuse claim alleges that Wachovia "knew that putting two elderly people . . . into a 20-year adjustable rate mortgage loan with a huge balloon payment is likely to harm them, because their income will only decrease while their payments will only increase thus making the loan unaffordable." Compl. ¶ 117. They allege that this was "financial abuse because [Wachovia] acquired the Plaintiffs' real or personal property for a wrongful use with the intent to defraud." *Id.* The essence of this claim is that the terms of Plaintiffs' loan constitute elder abuse. However, section 560.2(b)(4) preempts claims that attack the "terms of credit, including . . . adjustments to the interest rate, . . . payments due, . .

*United States District Court*
For the Northern District of California

. or term to maturity of the loan, including the circumstances under which a loan may be

called due and payable upon the passage of time or a specified event external to the loan."

Plaintiffs' elder abuse claim falls within section 560.2(b)(4) and is preempted. Wachovia's

motion to dismiss this claim is GRANTED.

**E. Unfair Competition**

Plaintiffs' fifth cause of action under California's Unfair Competition Law ("UCL"),

Cal. Bus. & Prof. Code § 17200, *et seq.*, alleges that Wachovia violated the UCL by

engaging in "unlawful, unfair and/or fraudulent business practices." Compl. at ¶ 120. While

these are the three varieties of unfair competition outlawed by the UCL, *Saldate v. Wilshire

Credit Corp.*, 711 F. Supp. 2d 1126, 1137 (E.D. Cal. 2010), "[a] plaintiff alleging unfair

business practices under these statutes must state with reasonable particularity the facts

supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14

Cal. App. 4th 612, 619 (1993). Plantiffs' UCL claim is devoid of facts. In their opposition,

Plaintiffs clarify that their UCL claim is premised upon the unlawful business practices

alleged in their claims for deceit, negligence, and breach of fiduciary duty.

To state a claim for "unlawful" business practices under the UCL, a plaintiff must

assert the violation of another law. *Saldate*, 711 F. Supp. 2d at 1138. However, when a

plaintiff cannot state a claim under the "borrowed" law, he or she cannot state a UCL claim

premised upon the violation of that law. *Id.* Because the Loders have failed to state a claim

against Wachovia for deceit, negligence, and breach of fiduciary duty, their UCL claim

premised upon these claims also fails. Wachovia's motion to dismiss this claim is therefore

GRANTED.

**F. TILA**

Plaintiffs allege that Wachovia  violated TILA by not providing disclosures mandated

by the statute. Specifically, Plaintiffs allege that Wachovia did not provide them with a

United States District Court

For the Northern District of California

consumer handbook and disclosures regarding their right to rescind, the amount financed, and finance charges. Plaintiffs seek rescission and statutory damages, as well as attorneys' fees and costs. Wachovia argues that this claim fails because Plaintiffs have not pleaded their ability to tender and because it is time-barred. The Loders' opposition offers no argument in support of this claim.

The statute of limitations for rescission under TILA is three years. 15 U.S.C. § 1635(f). The statute of limitations for a damages claim under TILA is one year. 15 U.S.C. § 1640(e). The alleged nondisclosures took place on or before July 12, 2006, when the loan was consummated. Thus both statutes of limitations had expired by November 30, 2010, the date Plaintiffs filed this lawsuit. Plaintiffs do not argue otherwise, and Wachovia's motion to dismiss this claim is therefore GRANTED.

**G. RESPA**

In their Complaint, Plaintiffs allege that Wachovia violated RESPA by failing to make various disclosures. At oral argument, Plaintiffs informed the Court that they wish to abandon their RESPA claim. Accordingly, Wachovia's motion to dismiss Plaintiffs' RESPA claim is GRANTED.

**H. Violation of Civil Code Section 2923.5**

Plaintiffs' claim for violation of California Civil Code section 2923.5 ("section 2923.5") alleges that Wachovia "never contacted [the Loders] in person or by telephone to assess their financial situation and explore options to avoid foreclosure." Compl. ¶153. Wachovia argues that this is an attack on Wachovia's "servicing" of or "participation in" Plaintiffs' mortgage under section 560.2(b)(10), and that the claim is therefore preempted. "[T]he overwhelming weight of authority has held that a claim under section 2923.5 is preempted by HOLA." *Taguinod v. World Savings Bank*, CV 10-7864-SVW, 2010 U.S. Dist. LEXIS 127677, at *20 (C.D. Cal. Dec. 2, 2010); *see also Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1033 (N.D. Cal. 2010); *but see Mabry v. Superior Court*, 185

11

Cal.App.4th 208, 214 (2010). This Court is concerned that such a broad interpretation of what it means to "service" or "participate in" a mortgage could operate to preempt most all California foreclosure statutes where the foreclosing entity is a national lender. Without a more thorough analysis of whether loan servicing is distinct from foreclosure, the Court cannot decide whether section 2923.5 is preempted by HOLA.

This cause of action is nonetheless dismissed for failure to state a claim. "Civil Code section 2923.5 requires, before a notice of default may be filed, that a lender contact the borrower in person or by phone to 'assess' the borrower's financial situation and 'explore' options to prevent foreclosure." *Mabry*, 185 Cal.App.4th at 213-14. Plaintiffs have not alleged that a notice of default was filed in this case. Thus they have failed to state a claim under section 2923.5, and Wachovia's motion to dismiss is GRANTED.

**F. Declaratory and Injunctive Relief**

Plaintiffs' claim for declaratory and injunctive relief states that "only the holder of the Note can initiate foreclosure proceedings," Compl. ¶ 158, and that "none of the Defendants possess the Note." Compl. ¶ 167. The Loders also allege that Wachovia sold the loan on the secondary market and "failed to follow the basic legal requirements for the transfer of negotiable instruments." Compl. ¶ 32.

Injunctive relief "is a remedy and not, in itself, a claim, and a claim must exist before injunctive relief may be granted." *See Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168 (1942) (citation omitted). Defendants' motion to dismiss Plaintiffs' claim for injunctive relief is therefore GRANTED. Because Plaintiffs could plead no set of facts that would state a claim for injunctive relief, the claim is DISMISSED WITH PREJUDICE.

Under 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the

United States District Court
For the Northern District of California

uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1356-57 (9th Cir. 1985).

Wachovia argues that the Loders' claim for declaratory relief is preempted by section 560.2(b)(10), which preempts claims that touch upon the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." Plaintiffs' claim for declaratory relief seems to be premised entirely upon negotiable instrument irregularities, and a case from the Central District of California held that "section 560.2 preempts . . . allegations as to misconduct surrounding foreclosure originating from negotiable instrument issues." *Winding v. Cal-Western*, 2011 U.S. Dist. LEXIS 8962 (E.D. Cal. Jan. 21, 2011). However, as above, the Court declines to decide this claim on preemption grounds given the record before it.

The claim does not survive, however, because the Loders have failed to demonstrate a controversy as to the legal relations of the parties. The original note need not be produced in order to initiate nonjudicial foreclosure. *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009). The basis of Plaintiffs' claim for declaratory relief appears to be the Commercial Code, yet nonjudicial foreclosures are governed by California Civil Code section 2924. *Moeller v. Lien*, 25 Cal. App. 4th 822, 834 (1994). The Loders have not alleged "a litigable controversy, which otherwise might only be tried in the future" with regard to negotiable instrument issues. *See Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). Wachovia's motion to dismiss this claim is therefore GRANTED.

## III. Motion to Strike

Wachovia's motion to strike attempts to excise from the Complaint language that invokes California Civil Code section 3294 ("section 3294"), which governs punitive damages. Because none of Plaintiffs' claims survive, Wachovia's motion to strike references to this statutory section is DENIED AS MOOT.

13

**United States District Court**
For the Northern District of California

1    **CONCLUSION**

2        Wachovia's motion to dismiss all claims in Plaintiffs' Complaint is GRANTED.

3    Unless otherwise specified, these claims are DISMISSED WITHOUT PREJUDICE.

4    Wachovia's motion to strike is DENIED AS MOOT. The Loders' amended complaint,

5    should they choose to amend, shall be filed no later than June 20, 2011.

6

7    **IT IS SO ORDERED.**

8

9    Dated: 5/18/11

10                                   THELTON E. HENDERSON, JUDGE
                                     UNITED STATES DISTRICT COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28